UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC SANTIFER,

       Plaintiff,                   Case No. 5:15-cv-11486
                                    District Judge Judith E. Levy
v.                                 Magistrate Judge Anthony P. Patti

INERGY AUTOMOTIVE
SYSTEMS, LLC. *et al.*,

       Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S INDEPENDENT MEDICAL EXAMINATION (DE 21)

This matter is before the Court for consideration of Defendants' February 16, 2016 motion to compel Plaintiff's independent medical examination ("IME"). (DE 21.)  On February 19, 2016, the Court issued a scheduling order requiring Plaintiff to respond to Defendants' motion by March 11, 2016.  (DE 22.)  To date, Plaintiff has not filed a response to the motion.

The Court noticed a hearing in this matter for April 6, 2016.  (DE 23 and 24.)  However, because this matter can be decided on the papers, the hearing was cancelled.  E.D. Mich. LR 7.1(f)(2).

## I.    BACKGROUND

Plaintiff filed his complaint on April 24, 2015, bringing claims of race discrimination pursuant to Title VII of the Civil Rights Act of 1964 and the Elliot-Larsen Civil Rights Act.  (DE 1.)  Specifically, he alleges that he was terminated from his position as a Manufacturing Operations Leader at Inergy Automotive Systems, LLC, because a co-worker accused him of being aggressive.  According to Plaintiff, he was not aggressive with the coworker, who also used racial epithets. (Id. at 2.)  Plaintiff received his Right to Sue letter from the EEOC on February 26, 2015 and timely commenced the instant action.  Plaintiff seeks damages in the amount of $2,000,000.00 for lost wages and wrongful termination.  (Id. at 4.) Specifically, Plaintiff's prayer for relief reads as follows:

> The Plaintiff is suing the Defendant(s) for $2,000,000.00 for potential los[s] of manufacturing career wages; including salaries, estimated overtime, annual Cost-of-Living (COLA), benefit expenses, and wrongful termination.  These estimates are based on the Plaintiff completing a 12 year career in manufacturing management to [the] age of 65 years old; at $75,000 annual salary that Intergy Automotive Systems was paying the Plaintiff at the time of termination.

(Id.)  Plaintiff itemizes his damages to seek $900,000 for lost salary, $180,000 for lost overtime, $306,083 for cost of living adjustments, $300,000 for benefits, and $313, 917 for wrongful termination.

## II.    THE INSTANT MOTION

Defendants filed the instant motion to compel Plaintiff's psychiatric IME on the basis that his prayer for "wrongful termination damages" includes damages for emotional distress.  As support for their position, Defendants point to Plaintiff's January 28, 2016 deposition, in which he testifies to the following:

> Q.    Well, let me ask you, you're also making a claim for emotional distress damages; correct?
>
> A.    Well, because we have been homeless and there's been strife and there has been difficulty there and I have not been able to achieve—you can allude to the employment situation—continuous employment.

(DE 21-2 at 109, ¶¶ 16-21.)

> Q.    And then you state wrongful termination, $313,917.  By that do you mean emotional distress damages?
>
> A.    All those things are captured under that because, again, if not for Mr. Rebbeck's erroneous and untrue allegations, I would not have been terminated because there was no record of anything, but yes, if you want to capture that.
>
> Q.    So that's your catch-all?
>
> A.    That's kind of my catch-all there. That was it.
>
> Q.    And do you allege that your being terminated has caused you to suffer emotional-type injuries—or what other injuries or damages are you alleging in that catch-all?
>
> A.    Well, emotionally for sure because it created homelessness that had nothing to do with anything other than the termination.  It has been very stressful on my grandmother, who really was resentful and unhappy in the healthcare facility, who has a

3

> reasonable sense of independence despite her lack of mobility.
> She's functionally illiterate.  So there has been stress on our
> family to try to get back some reasonable normalcy . . . .

(Id. at 5, ¶¶ 21-25 and 6, ¶¶ 1-19.)  Defendants assert that this testimony

establishes that Plaintiff has brought his mental health in controversy, meaning that

Plaintiff must submit to a mental examination.  Accordingly, on February 1, 2016,

Defendants served upon Plaintiff a notice of IME to take place on February 8, 2016

at 3:00 P.M. at the offices of Gerald Shiener, M.D., in Birmingham, Michigan.

(DE 21-3.)

As noted above, Plaintiff did not file a response to this motion.  However, in

emails to Defendants dated February 2, 2016, February 8, 2016, and February 14,

2016 Plaintiff asserted that he was not required to submit to the IME.  Specifically,

he argued that his wrongful termination damages constituted "less than 15%" of

his damages and noted that he was "not claiming emotional stresses or

complications that have caused medical concerns."  (DE 21-4 at 4.)

## III.   DISCUSSION

Pursuant to Federal Rule of Civil Procedure 35, a court may "order a party

whose mental or physical condition . . . is in controversy to submit to a physical or

mental examination by a suitably licensed or certified examiner."  Fed. R. Civ. P.

35(a)(1).  The motion must "specify the time, place, manner, conditions, and scope

4

of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B).

The party making the motion to compel IME has the burden of demonstrating that: "(i) the opposing party's physical or mental condition is in controversy, and (ii) there is good cause to require the opposing party to submit to the examination." *Gohl v. Livonia Pub. Sch.*, No. 12-cv-15199, 2015 WL 1469749, at *1 (E.D. Mich. Mar. 30, 2015) (citing *Benchmaster Inc. v. Kawaelde*, 107 F.R.D. 752, 753 (E.D. Mich. 1985)). According to the leading case on this subject, these standards are not met by "mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). Such an analysis "requires discriminating application by the trial judge . . . ." *Id.*

"'The majority of courts have held that plaintiffs do not place their mental condition in controversy merely by claiming damages for mental anguish or "garden variety" emotional distress.'" *Gaines-Hanna v. Farmington Pub. Sch.*, No. 04-cv-74910-DT, 2006 WL 932074, at *8 (E.D. Mich. Apr. 7, 2006) (quoting *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 553, N.D. Ga. 2001); *see also, e.g., Acosta v. Tenneco Oil Co.*, 913 F.2d 205, 209 (5th Cir. 1990) (concluding that

5

ruling in the defendant's favor would "sanction a mental examination in every age discrimination case"); *Ford v. Contra Costa Cnty.*, 179 F.R.D. 579, 580 (N.D. Cal. 1998) (Where defendants "presented little more than [the plaintiff's] prayer for emotional and mental distress damages," they did not meet their burden under Rule 35(a)); *Robinson v. Jacksonville Shipyards, Inc.*, 118 F.R.D. 525, 528 (M.D. Fla. 1988) (declining to compel an IME where the plaintiff merely asserted a claim of damages for physical and emotional distress, but did not allege "psychiatric injuries."); *Turner v. Imperial Stores*, 161 F.R.D. 89, 92-97 (S.D. Cal. 1995) (collecting cases).  The phrase "garden variety emotional distress damages" has been defined as "the generalized insult, hurt feelings and lingering resentment which anyone would be expected to feel if he or she were the recipient of an adverse employment action attributed to discrimination."  *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 657, 660 (D. Kan. 2004); *see also Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999) (describing garden variety emotional distress as "the negative emotions that [plaintiff] experienced essentially as the intrinsic result of the defendant's alleged conduct" but not the "resulting symptoms or conditions that [plaintiff] might have suffered."); *Kunstler v. City of New York*, No. 04-civ-1145(RWS)(MHD), 2006 WL 2516625, at *9 (S.D.N.Y. Aug. 29, 2006) *aff'd*, 242 F.R.D. 261 (S.D.N.Y. 2007) (garden variety emotional damages are "the distress that any healthy, well-adjusted person would likely feel as a result

of being so victimized" by the defendants' misconduct); *Flowers v. Owens*, 274 F.R.D. 218, 225-26 (N.D. Ill. 2011) (collecting cases). Courts in the Sixth Circuit adopt the majority view. 7 Moore's Federal Practice 3d ¶ 35.03[2]; *see*, *Johnson v. Peake*, 273 F.R.D. 411, 412 (W.D. Tenn. 2009) (citing *Gaines-Hanna*, *supra*.) and *Taylor v. Nat'l Grp. of Co's, Inc.*, 145 F.R.D. 79, 79-80 (N.D. Ohio 1992). "A similar majority . . . also recognize that a mental exam is warranted when one or more of the following factors are present:"

> (1) a tort claim is asserted for intentional infliction or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder is made; (3) a claim of unusually severe emotional distress is made; (4) plaintiff intends to offer expert testimony in support of a claim for emotional distress damages; and/or (5) plaintiff concedes that her mental health condition is in controversy within the meaning of Rule 35.

*Stevenson*, 201 F.R.D. at 554; *see also* Moore's, *supra*. §35.03[1][b]. Courts in this district have applied these factors in deciding whether a motion to compel IME should be granted. *Green v. Michigan Dep't of Nat. Res.*, No. 08-14316, 2009 WL 1883532, at *3 (E.D. Mich. June 30, 2009) (compelling an IME where plaintiff specified a physical manifestation of his emotional distress, thereby alleging a "level of severity beyond that of garden variety emotional distress and mental anguish"); *Kuslick v. Roscxcewski*, No. 09-12307-BC, 2012 WL 988355, at *4 (E.D. Mich. Mar. 16, 2012) (compelling an IME where the plaintiff's "primary damages are for emotional harm caused by the incident," raising them to a level

7

beyond garden variety damages); *Gaines-Hanna*, 2006 WL 932074 at *8 (compelling an IME where the plaintiff's witness list indicated that medical expert testimony would be offered and alleged "unusually severe emotional distress.")

Applying the foregoing factors, Plaintiff has not alleged more than garden variety emotional distress damages, if he has even done that. First, he does not assert a claim for intentional or negligent infliction of emotional distress. His only claim is for race discrimination pursuant to Title VII of the Civil Rights Act of 1964 and the Elliot-Larsen Civil Rights Act. Nor does he allege a specific mental or psychiatric injury or disorder. He does not even specifically seek damages for emotional distress in his complaint. (DE 1 at 4.)

Instead, Defendants' entire argument rests upon the above mentioned deposition testimony, in which Plaintiff, after being pressed in cross-examination, indicates that he has been homeless and "had difficulty." (DE 21-2 at 3, ¶¶ 16-23.) He further testified that any emotional distress damages were captured under the heading of "wrongful termination" damages." (Id at 5-6.) Again, Plaintiff describes his emotional distress as homelessness brought on by his loss of income. (Id. at ¶¶ 9-10.) This could not be considered a claim of unusually severe mental distress sufficient to compel an IME. Plaintiff does not even allege that he suffers from a mental health issue, other than the entirely predictable stress one would expect to be brought on by losing his income and home. *See Varlesi v. Wayne*

8

*State Univ.*, No. 14-1862, 2016 WL 860236, at *3 (6th Cir. Mar. 7, 2016) (upholding the district court's refusal to compel an IME where the plaintiff was claiming "'garden variety' emotional harm resulting from the ordeal" of pregnancy discrimination and retaliation in a Title IX action).

Furthermore, from the current record, there is no indication that Plaintiff intends to offer expert testimony in support of his claim for emotional distress damages. Finally, Plaintiff has not conceded that his mental health condition is in controversy, noting that less than 15% of his damages were for wrongful termination with only a "minor portion, if any[,] for medical/emotional reasons." (DE 21-6 at 2.) Notably, Defendants do not cite to any case law in their brief to demonstrate that any other court has compelled an IME in a similar circumstance. Nor has the Court's independent research revealed binding authority (or otherwise) in which an IME was compelled for a Title VII plaintiff who did not even allege that he or she suffered from emotional distress in his complaint. There is simply not enough in the record before the Court, beyond Plaintiff's brief deposition testimony, to indicate that the Court should exercise its discretion to compel an IME in this matter.

## IV.   CONCLUSION

Defendants have not established that Plaintiff's mental condition is in controversy for the purposes of compelling an IME pursuant to Rule 35. Nor have

9

Defendants established good cause for such an order.  Accordingly, Defendants'

motion to compel IME is **DENIED.**  (DE 21.)

**IT IS SO ORDERED.**


Dated: April 4, 2016            s/Anthony P. Patti
                               ANTHONY P. PATTI
                               UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing order was sent to parties of record on
April 4, 2016, electronically and/or by U.S. Mail.

                               s/Michael Williams
                               Case Manager for the
                               Honorable Anthony P. Patti