UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC SANTIFER,

       Plaintiff,

v.

INERGY AUTOMOTIVE
SYSTEMS, LLC. *et al.*,

       Defendants.

Case No. 5:15-cv-11486
District Judge Judith E. Levy
Magistrate Judge Anthony P. Patti

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 29)

**I.**    **RECOMMENDATION**:  The Court should grant Defendant's motion for summary judgment and dismiss this action in its entirety.  (DE 29.)

**II.**    **REPORT**

    **A.**  **Procedural Background**

Plaintiff, Eric Santifer, is proceeding without the assistance of counsel.  He filed his complaint and application to proceed without prepayment of fees on April 24, 2015.  (DE 1 and 2.) The Court granted his application on April 29, 2015.  (DE 4.)  In his complaint, Plaintiff asserts that his former employer, Inergy Automotive Systems (USA), L.L.C. (now Plastic Omnium-Auto Inergy USA, L.L.C.) ("Inergy Automotive" or "Defendant"), wrongfully terminated him on the basis of racial discrimination, in violation of Title VII, 42 U.S.C. § 2000e-2.  He seeks monetary

damages in the amount of $2 million for lost wages, including salary, estimated over time, cost of living adjustments, benefit expenses, and "wrongful termination."  (DE 1 at 4.)

Defendant filed this motion for summary judgment on May 31, 2016.  (DE 29.)  Defendant first argues that Plaintiff's lawsuit is untimely because he received his Notice of Right to Sue letter ("RTS") from the Equal Employment Opportunity Commission ("EEOC") more than 90 days before filing his complaint.  In the alternative, Defendant asserts that Plaintiff was terminated, per company policy, after a human resources investigation concluded that he had attempted to intimidate another employee through physical contact, and not on the basis of his race.  Specifically, Defendant argues that Plaintiff fails to establish a *prima facie* case of race discrimination because he cannot demonstrate that he was treated less favorably than similarly-situated individuals outside his protected class.  Moreover, Defendant argues, even if Plaintiff could establish a *prima facie* case, he cannot establish pretext as a matter of law.  Finally, Defendant contends that Plaintiff's claim against Rebbeck must be dismissed because individual employees may not be held personally liable under Title VII.  The motion is supported by citations to Plaintiff's own deposition testimony, and by the attached declarations of James Rebbeck (DE 29-5), Melissa Farrell (DE 29-6), and Le Hoang (DE 29-7).

2

Plaintiff opposes the motion.  In his unsworn response, he asserts that he timely filed the instant action because, despite being contacted by the EEOC office on January 14, 2015 to inform him that they would be mailing the RTS letter the following day, he did not *actually receive* the document until January 26, 2015, the day that he picked it up from his Post Office Box after being out of town.  In addition, Plaintiff explains that the results of Defendant's investigation were incorrect and maintains that he never attempted to intimidate another employee through physical contact.  Instead, Plaintiff argues that the other employee's actions were "racist, irresponsible, intentional, and absolutely untrue."  (DE 37 at 10.)  He asserts that he can establish that he was treated less favorably than similarly-situated white employees, by providing an unsworn narration in the body of his brief about a confrontation between two white employees that "nearly came to blows," but which resulted in both employees keeping their jobs.  (Id. at 11.)

Defendant filed a reply on July 19, 2016, in which it maintains that, even accepting Plaintiff's version of the facts as true, there are no genuine disputes of material fact precluding a grant of summary judgment in this matter.  (DE 42.)  Defendant also points to Plaintiff's admission that he was aware the RTS letter was being mailed on January 15, 2015 as further proof that his lawsuit was untimely filed.

### B.  <u>Factual Background</u>

3

### 1.   Plaintiff's Tenure at Inergy Automotive[1]

Inergy Automotive hired Plaintiff on July 14, 2014 as a probationary Manufacturing Operations Leader ("MOL").   (DE 29-2 at 73-74.)[2]   The probationary period was to last six weeks, and involved training on first and third shifts, despite being hired for the second shift.  (Id. at 81-82.)  The incident that led to Plaintiff's termination occurred during the week of August 11, 2014, when Plaintiff was training with fellow MOLs James Rebbeck and Le Hoang.  (Id. at 120.)  On the second night of the work week, Plaintiff apparently arrived fifteen minutes late, leading to Rebbeck and Hoang "very jokingly" commenting on his tardiness.  (Id.)  The following night, Plaintiff again arrived late (despite leaving for work five minutes earlier than the night before).  When he walked in, Rebbeck questioned Plaintiff's tardiness and said something to the effect of "you understand that you have a responsibility to be here before the shift and you know you have to set an example."  (Id. at 132.)  Plaintiff does not dispute that he took issue with Rebbeck's statements, noting that he responded, "Why are we having this conversation? You're not my supervisor."  (Id.)  Plaintiff testified that after that, he

---

[1] Much of the factual background here is taken from Plaintiff's deposition testimony.  In his response to the motion for summary judgment, Plaintiff specifies that he agrees with Defendant's version of the "initial hiring and training information."  (DE 37 at 6.)

[2] When citing to Plaintiff's deposition, I will use the page numbers provided by Defendant.  In all other citations, I will use the page number at the top of the page, provided by the CM-ECF system.

did not speak to Rebbeck again until about 7:00 the next morning, when he put his right hand out and patted him on the shoulder with his left hand, stating "Jim, we have to work together.  Let's put this situation behind us."  (Id. at 133-34.)

### 2.   Inergy Automotive's Investigation

Following the August 13, 2014 incident, Rebbeck complained to Human Resources Manager, Melissa Farrell, and emailed his written statement about the incident to her on August 14, 2014.  (DE 29-3.)  Rebbeck's account of the incident differs from Plaintiff's.  Specifically, he asserted to Farrell (and reiterates in his sworn declaration) that Plaintiff "put his hands on my shoulder . . . and said 'OK, listen!" during the initial confrontation.  (DE 29-5 at ¶ 7e.)  He also indicates that, following the incident, Hoang told him that Plaintiff commented that Rebbeck was "not going to speak to him like he was some 'black boy.'"  (DE 29-3 at 2.)

Farrell also asked Hoang to provide a written statement, which he did via email on August 14, 2014.  (DE 29-4.)  Mr. Hoang explained that Plaintiff responded to their comments about his tardiness in a "very poor manner," but that he did not witness any physical confrontation between Rebbeck and Plaintiff.  He also reiterated Plaintiff's comment about being treated like a "little black boy." (Id. at 2.)  In his sworn declaration, Hoang avers that the email statement to Farrell was a "true and accurate record" of what he observed on August 13, 2014.  (DE 29-7 at ¶¶ 6-7.)

Farrell then reached out to Plaintiff by telephone that evening.  (DE 29-8; DE 29-6 at ¶ 7.)  During their conversation, Plaintiff denied ever "putting his hands on [Rebbeck] at all."  (Id. at 3.)  Farrell described him as being "adamant that no physical contact w[ith] violent intentions occurred."  (Id. at 4.)  However, in an August 18, 2014 statement, Plaintiff changed his story slightly, indicating that while he did "not recall ever touching Mr. Rebbeck," he may have "gently pa[tt]ed him on his arm."  (DE 29-6 at ¶ 8.)  Finally, on August 19, 2014, MOL Penny Garver provided a statement in which she noted that she had previously complained to her supervisor about Plaintiff's "lack of commitment, willingness to learn, and dependability," specifically pointing to his tardiness during his probationary period.  (DE 29-6 at ¶ 9.)

Based on her investigation, Farrell concluded that Plaintiff "put his hands on Rebbeck."  (DE 29-6 at ¶ 11.)  She avers that she "honestly believed" Plaintiff had attempted to intimidate Rebbeck through physical contact, in violation of company policy.  (Id. at ¶¶ 12-13.)  After obtaining approval from Mikel Slater, the Vice President of Human Resources, Farrell made the decision to terminate Plaintiff.

### 3.    The EEOC Process

After he was terminated, Plaintiff filed a complaint with the EEOC.  As part of his complaint in the instant action, Plaintiff provides an RTS letter from the EEOC dated January 14, 2015.  (DE 1 at 5.)  Handwritten below the date is a note

that Plaintiff received the document on January 26, 2015 at 2:40 p.m.  (Id.)  In his unsworn response to Defendant's motion, Plaintiff explains that, on January 14, 2015 he was contacted by the EEOC and informed that the agency would be mailing its RTS letter the following day.  (DE 37 at 10.)  Accordingly, he checked his current address, a P.O. Box in Romeoville, Illinois, on January 17, 2015 and the letter had not arrived.  He was not able to check the P.O. Box again until Monday, January 26, 2015, at which time he "received" the letter, finally having it actually in hand.  The letter stated the following:

> You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**, or your right to sue based on this charge will be lost.

(DE 1 at 5, emphasis in original.)  He then commenced the instant action on April 24, 2015, 100 days after January 15, 2015 and 89 days after January 26, 2015.

## C.  <u>Standard</u>

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts

7

in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond

8

with a showing sufficient to establish an essential element of its case. . . ."

*Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### D.  <u>Discussion</u>

 I will address each of Defendant's arguments in turn.  However, because I find that Plaintiff's lawsuit is barred as untimely, I will only briefly address the claim of race discrimination as a matter of law.

### 1.      **Timeliness of Plaintiff's Complaint**

Defendant first argues that Plaintiff's lawsuit should be barred as untimely because it was filed more than 90 days after receipt of notice of final action taken by the EEOC.  Pursuant to Title VII, the time for bringing a civil action by an employee for redress of grievances is "[w]ithin 90 days of receipt of notice of final action . . . ."  42 U.S.C. § 2000e-16(c).  Failure to commence an action within the prescribed time period bars a suit under Title VII.  *Gibson v. Shelly Co.*, 314 F. App'x 760, 767 (6th Cir. 2008).  The Sixth Circuit has explained that the ninety-day period commences when:

> notice is *given*, and hence the ninety-day limitations term begins running, on the fifth day following the EEOC's mailing of an RTS notification to the claimant's residential address, by virtue of a presumption of actual delivery and receipt within that five-day duration, unless the plaintiff rebuts that presumption with proof that he or she did not *receive* notification within that period.

9

*Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557-58 (6th Cir. 2000) (emphasis in original).  Accordingly, this Circuit recognizes constructive receipt of the RTS, noting that a "more lenient rule would illicitly license a Title VII claimant to indefinitely extend limitations by avoiding acceptance of an RTS notice." *Id.* at 558-560.  Under the Sixth Circuit's "Five Day Rule," Plaintiff is charged with receiving the RTS letter on January 20, 2015, five days after it was placed in the mail and 94 days before his lawsuit was filed.

In his motion response, Plaintiff concedes that he was actually informed that his RTS was being mailed to his address on January 15, 2015.  (DE 37 at 10.) Even calculating receipt from that day plus five, he would have "constructively received" the notice on January 20, 2015 and  filed his lawsuit 94 days later, on April 24, 2015.  Although Plaintiff has seemingly attempted to rebut the presumption that he received the document before January 26, 2015 by handwriting that date on his RTS, he has in fact done the opposite by admitting that he was aware, on January 14, 2015, that the RTS letter was being mailed to him the following day.  *See Graham*, 209 F.3d at 559 (noting that the *pro se* plaintiff was properly charged with notice where she "indisputably knew that her RTS notice would be proximately arriving by United States mail.").  Accordingly, no matter how one slices it, Plaintiff filed his lawsuit more than 90 days after receiving his RTS letter.

10

### 2. Equitable Tolling

Although Plaintiff does not attempt to make an equitable tolling argument, and the Court is not required to consider it, I will address it here for the purposes of completeness, particularly in light of his *pro se* status. Filing a timely charge of discrimination is "subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). However, equitable relief is extended "only sparingly in suits against private litigants . . . ." *Irwin v. Dept. of Veterans Affairs*, 482 U.S. 89, 90 (1990). The Sixth Circuit has identified the following five factors for courts to consider when determining the appropriateness of equitably tolling a statute of limitations:

> 1) lack of notice of the filing requirements; 2) lack of constructive knowledge of the filing requirements; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

*Truitt v. Cty. Of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).

Here, four of the five factors weigh strongly against allowing equitable tolling in this instance. First, the RTS letter itself stated the following on its face:

> You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**, or your right to sue based on this charge will be lost.

(DE 1 at 5, emphasis in original.) Plaintiff cannot reasonably argue that he was unaware of the 90-day filing requirements. In fact, he filed his complaint exactly

11

89 days after the date he purports to have had the document in hand and thus "received" it, indicating that he was well aware of the impending deadline.

Second, as addressed in the previous section, Plaintiff had more than constructive knowledge that the RTS was mailed on January 15, 2015; he had *actual* knowledge.

Third, construing Plaintiff's filing in the light most favorable to him, he showed some degree of diligence in filing his lawsuit very close to the 90-day deadline, yet need not have filed his case so close to the wire after previously presenting it at the administrative level, even by his own miscalculation. "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham*, 209 F.3d at 561.

Fourth, and the only factor weighing somewhat in Plaintiff's favor, Defendants have not shown that they will be prejudiced by allowing equitable tolling of Plaintiff's claims. They have defended the case to this point and have addressed the merits of Plaintiff's case in the instant motion for summary judgment. On the other hand, they incur significant expense in bringing this case to trial and suffer the loss of what would normally be a complete defense should equitable tolling be applied.

Finally, it was not reasonable for Plaintiff to remain ignorant of the 90-day deadline, which was stated in bold-faced type on his RTS letter. Even Plaintiff's

status as a *pro se* litigant cannot cure this defect. *Id.* at 561 ("even a *pro se* litigant

. . . is required to follow the law.  In particular, a willfully unrepresented *plaintiff*

volitionally assumes the risks and accepts the hazards which accompany self-

representation) (emphasis in original).

Accordingly, Plaintiff's lawsuit is barred as untimely.  As such, I

recommend granting Defendant's motion for summary judgment.  However, I will

briefly address the remainder of Defendant's arguments, as I also find that the

motion could be granted on the merits of the case.

### 3.    The *McDonnell Douglas* Framework

"The *McDonnell Douglas/Burdine* formula is the evidentiary framework

applicable . . . to claims brought under Title VII . . . ."  *Mitchell v. Toledo Hosp.*,

965 F.2d 577, 582 (6th Cir. 1992).  Following that framework, in order to make out

a claim of race discrimination under Title VII, a plaintiff must first establish a

*prima facie* case of discrimination, which varies depending on the specific facts of

the case.  *Tartt v. Wilson Cnty., Tenn.*, 592 F. App'x 441, 445 (6th Cir. 2014)

(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Plaintiff

can establish a *prima facie* case here by showing that he: (1) is a member of a

racial minority; (2) was discharged from his position of employment; (3) was

qualified for the position; and (4) was replaced by a person outside the class or a

comparable non-protected person was treated better.  *Mitchell*, 964 F.2d at 582; *see*

also *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (applying the *McDonnell Douglas* framework to a race discrimination case).

If a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802. Finally, if the defendant offers such a reason, the burden returns to the plaintiff to show that the proffered reason is merely a pretext for discrimination. *Id.* at 804.

The burden of persuasion rests with the plaintiff at all times. *Hunter v. Sec'y of the Army*, 565 F.3d 986, 996 (6th Cir. 2009). To meet this burden in the Title VII context, a plaintiff must demonstrate that race was a "motivating factor" in the employer's discriminatory action. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 318 (6th Cir. 2012).

### a. Plaintiff Fails to Make a *Prima Facie* Case of Discrimination

Here, Plaintiff makes no showing that he was replaced by a person outside the class. He also cannot establish that a similarly situated non-protected person received more favorable treatment than he. The Sixth Circuit has described the "similarly situated" element as follows:

> To be deemed "similarly situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and engaged in the same conduct without such differentiating or mitigating

14

circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell*, 964 F.2d at 583 (internal quotations and citations omitted). This requires "that the plaintiff demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis in original).

In an attempt to do so in his unsworn response—which in turn appears to be quoting his own statement to the EEOC—Plaintiff points to a situation in which two white employees "nearly came to blows" but were not fired. (DE 37 at 11.) He provides no admissible evidence that the HR manager or anyone with disciplinary authority was aware of this. Moreover, Defendant points to Plaintiff's deposition testimony, in which he admits that, in the situation he described, there was "no allegation that somebody had physically touched another." (DE 42-2 at 116.) In contrast, there was an allegation of physical touching in this case, distinguishing the two circumstances and Defendant's treatment of them. Further, HR manager Farrell avers that in a more comparable situation in 2014, a white production operator's employment was terminated after he was accused of (and likewise denied) pushing a fellow employee. (DE 29-6 at ¶¶ 17-19.) She also notes that the company has a "zero tolerance approach to any type of workplace violence or intimidation." (Id. at ¶ 13.) As such, even if Plaintiff had timely filed his complaint, he fails to establish a *prima facie* case of discrimination.

15

### b.   Plaintiff Fails to Rebut Defendant's Legitimate, Non-Discriminatory Reasons for His Termination

Even if Plaintiff could make a *prima facie* case, Defendant has presented records and testimony which support legitimate, non-discriminatory reasons for terminating his employment.  Most convincing is Plaintiff's deposition testimony, in which he admits the following:

> Q:   [Y]ou knew that if you had done what was alleged, that you put your hands on him in a confrontational manner, that would be a mistake?
>
> A:   Absolutely.
>
> Q.   And you knew that that would be a violation of the company's policy for which you could be terminated?
>
> A.   Absolutely.

(DE 29-2 at 137.)  Terminating an individual's employment based on a violation of the company's policy is a legitimate, nondiscriminatory reason for Plaintiff's termination "'which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'"  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)); *see also Jones v. Potter*, 488 F.3d 397, 407 (6th Cir. 2007) (employer's proffered reason for terminating an employee was not pretextual where he was accused of an altercation with a coworker).

16

Accordingly, Plaintiff must present evidence sufficient to establish that Defendant's proffered reasons were mere pretext for discrimination in order to defeat its motion for summary judgment. The Sixth Circuit provides that a plaintiff may establish that the employer's proffered reason was mere pretext by showing:

1)   the stated reasons had no basis in fact;

2)   the stated reasons were not the actual reasons; and

3)   that the stated reasons were insufficient to explain the defendant's actions.

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000). "But a reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). Furthermore, "the aim is not to . . . question the soundness of an employer's judgment," where an employee is not performing to the employer's satisfaction. *McDonald v. Union Camp Corp.*, 828 F.2d 1155, 1160 (6th Cir. 1990).

Here, Plaintiff has merely presented conjecture and speculation that Defendant's proffered reason to terminate him was pretext for racial discrimination. For example, he cites his Christian values, professional and administrative experiences, and educational and athletic background as evidence that he did not physically threaten Rebbeck. Such assertions are not sufficient to

17

survive summary judgment. *See Brennan Tractor Supply Co.*, 237 F. App'x 9, 19-20 (6th Cir. 2007) ("[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment . . . . [A] court may not reject an employer's explanation [of its actions] unless there is sufficient basis in the evidence for doing so." (internal citations omitted)); *Metz v. Titanium Metals Corp.*, 475 F. App'x 33, 36 (6th Cir. 2012) (plaintiff's disagreement with defendant's assessment of his or her value does not evidence discrimination). In contrast, Defendant has provided a sworn statement from the individual who made the decision to terminate Plaintiff in which she states that she "honestly believed" Plaintiff had attempted to intimidate Rebbeck through physical contact, in violation of company policy. (DE 29-6 at ¶¶ 12-13.) Defendant also provides Plaintiff's deposition testimony, in which he admits that he in fact touched Rebbeck's shoulder with his left hand, despite denying any contact with Rebbeck when Farrell conducted her investigation. (DE 29-2 at 134, ¶¶ 1-4.) Moreover, even if Farrell's "honest belief" were factually mistaken, this would not establish pretext, as a mere mistake in meting out discipline is not actionable under Title VII. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (noting that "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is

18

ultimately shown to be incorrect.").  As such, Plaintiff has failed to present evidence sufficient to establish that Defendant's proffered reasons for his termination were mere pretext for discrimination.

> ### c.    Rebbeck Cannot be Held Personally Liable Under Title VII

Finally, Plaintiff's claims against Rebbeck cannot survive summary judgment.  Plaintiff clarifies multiple times in his recounting of the August 13, 2014 incident that Rebbeck is a fellow MOL and not a supervisor.  (DE 37 at 6, DE 29-2 at 132, ¶ 7.)  "Title VII's remedial provisions are incompatible with the imposition of liability on individual employees for violations of the Act."  *Wathen v. Gen. Elec. Co.*, 115 F. 3d 400, 406 (6th Cir. 1997).  Accordingly, Plaintiff cannot maintain an action under Title VII against Rebbeck, an individual employee.

## III.   CONCLUSION

Defendant's motion for summary judgment should be granted because Plaintiff failed to file the instant action within 90 days of receiving his RTS letter. In the alternative, the motion should be granted because Plaintiff cannot establish his claim of race discrimination as a matter of law.

## IV.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

19

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 12, 2016            s/Anthony P. Patti
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 12, 2016, electronically and/or by U.S. Mail.

                                  s/Michael Williams
                                  Case Manager for the
                                  Honorable Anthony P. Patti